IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00779-WYD-CBS

LYNN V. BERRY,

      Plaintiff, *pro se,*

v.

FEDERAL AVIATION ADMINISTRATION,

      Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

      The matter before the court is Defendant Federal Aviation Administration's ("Defendant") Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) [#5], filed on July 1, 2005.  On Plaintiff's failure to respond to Defendant's Motion to Dismiss, a Minute Order [#8], filed July 25, 2005, gave Plaintiff until July 29, 2005, in which to file a formal written response to the Motion to Dismiss.  As of August 15, 2005, Plaintiff has not filed a formal, written response.  Therefore, pursuant to the July 25, 2005, Minute Order, the Motion to Dismiss is deemed submitted for ruling.  A Memorandum [#6], filed on July 6, 2005, referred this motion to the Magistrate Judge for determination.

      The court has reviewed the Motion to Dismiss, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons discussed below, it is recommended that the Motion to Dismiss be granted, and that this civil action be dismissed with prejudice.

**I.**      **Background.**

Plaintiff began his employment with Defendant on October 26, 1989.  At all times pertinent to this Complaint, Plaintiff was employed as an Airway Transportation Specialist in the Rocky Mountain System Management Office, Automated Data Support Center, Denver Air Route Traffic Control Center in Longmont, Colorado.

According to Defendant, in the summer of 2002, Plaintiff's attendance became erratic, and agency management became aware that he had alcohol problems.  On August 9, 2002, Plaintiff left a voice mail message with his supervisor Michael J. Olivas ("Olivas") requesting that he be placed on annual leave until he could obtain a hardship transfer to Houston.  Olivas complied, and placed Plaintiff on annual leave from August 9, 2002, to August 26, 2002.  On August 23, 2002, Plaintiff called the facility and left a voice mail message indicating that he wished to terminate his employment.  According to Defendant, his call was returned, and he was encouraged to seek referral to Employee Assistance Program (EAP), which provides assistance to employees needing counseling or other emotional support.

According to Defendant, Plaintiff returned to work on August 27, 2002, for one day.  However, based on a his admitted misuse of alcohol, he was issued a letter removing him from safety sensitive issues and assigning him to administrative duties.  On August 28, 2002, Plaintiff called in sick via voice mail and was placed on sick leave status until September 6, 2002.  He was directed to contact Olivas directly with any additional requests for leave.

On September 6, 2002, Plaintiff again failed to report for work or properly request leave.  Olivas called him and told him that he would be considered absent without leave ("AWOL") if the agency could not determine his status.  On September 9,

2002, Plaintiff left another voice mail message stating that he wanted to be placed on annual leave until he could find a place to live and a lawyer to deal with marital problems. He was placed on annual leave from September 9, 2002, to November 2, 2002. Subsequently, Plaintiff provided medical documentation and was retroactively placed on sick leave from September 12, 2002, to September 26, 2002.

According to Defendant, Plaintiff demonstrated erratic behavior during this time. For example, on September 16, 2002, he called Olivas and stated that he intended to resign. However, the next week, on September 24, 2002, he contacted Olivas and told him that he intended to remain with the agency. Based on this behavior, Plaintiff was placed on administrative leave on September 27, 2002, and was barred access to the FAA facility pending an assessment by EAP and receipt of medical information regarding his health condition.

On October 8, 2002, Plaintiff met with Olivas and advised him that he was suffering from clinical depression. Plaintiff requested a position outdoors or with windows or a position which paid more money. This request was denied. Plaintiff gave to Olivas medical documentation excusing him from work until November 10, 2002. He was placed on sick leave until November 12, 2002.

On November 12, 2002, Plaintiff once again failed to report for work. Because of this failure, he was placed on AWOL status. In a letter dated November 20, 2002, via certified mail addressed to his last known address, Plaintiff was informed that he was being considered AWOL since November 12, 2002, and was directed to report to work by December 2, 2002. He was informed that failure to do so could result in disciplinary removal. The certified mail envelope came back unclaimed.

On January 2, 2003, the agency received mail from Plaintiff with a return address in Houston, Texas. In this letter, Plaintiff enclosed his government I.D., his government credit card, and his FAA access card. In a letter dated January 7, 2003, sent to the Houston address, Plaintiff was again informed of his AWOL status and that removal would be proposed if he did not resign by January 24, 2003. No resignation was ever received, nor was any contact made by Plaintiff prior to January 24, 2003.

On January 28, 2003, Olivas received a telephone call from Plaintiff requesting a return to work on February 3, 2003. Plaintiff was advised that removal was proposed. On February 3, 2003, Plaintiff appeared at the facility. The facility manager offered to place him on administrative leave pending processing of his proposed removal, but Plaintiff declined. Plaintiff stated that he was living in a homeless shelter, and that there was no way to contact him. At the conclusion of the meeting, Plaintiff stated that there was no need to change his AWOL status, and that the agency would hear from his representative.

On February 4, 2003, the agency sent Plaintiff a letter that was directed to his last known address in Houston, granting him 45 days of paid administrative leave pending removal. On February 18, 2003, Plaintiff was sent a letter of proposed removal, which was sent to his last known address. On March 3, 2003, Plaintiff again appeared at the facility and requested a copy of documents supporting proposed removal. These documents were provided two days earlier.

On March 11, 2003, Olivas received a letter from Plaintiff asserting that he had been granted sick leave on August 3, 2002, that he had asked for annual leave, and

4

when that annual leave was not granted, that he went on leave without pay.  On April 25, 2003, Plaintiff was sent a letter that proposed removal from federal service, effective May 2, 2003.  This letter was sent to the last known address in Houston via certified and priority mail.  The letter informed Plaintiff of his appeal rights under four different procedures: (1) the agency's Guaranteed Fair Treatment procedure ("GFT") internal appeal procedure; (2) the Merit System Protection Board's ("MSPB")  appeal procedure; (3) the negotiated grievance procedure; and (4) the Equal Employment Opportunity ("EEO") complaint process.  The letter was forwarded by an unknown party in Houston to a Denver Post Office Box.  However, it was returned unclaimed to the agency.  Plaintiff made no other contacts with the agency.  He did not file any form of appeal to his removal decision.

In his Complaint, Plaintiff asserts the following four claims for relief:

Claim One: "Violation of Refusal to Grant a Second Request for Annual Leave";

Claim Two: "Violation of Employee's Right to be Informed";

Claim Three: "Violation for Losses Incurred";

Claim Four: "Violation 5 U.S.C. 7513 Wrongful Removal."

It is unclear under what statute Plaintiff brings this action.  However, in his Civil Cover Sheet, he describes his claims as "Permission to Exhaust Annual Leave, but denied and Family Medical Leave Act, not informed of it."  Therefore, Claims One and Two appear to state a claim for a violation of the FMLA.  Claim Three is not a claim, but rather a recitation of damages.  Finally, Claim Four is a claim for wrongful removal despite requests for annual leave.  Plaintiff did not appeal his removal from federal service before the MSPB.  Therefore, it is unclear what theory a claim before the MSPB

would have asserted.[1]   However, based on the factual allegations in the Complaint, it can be assumed that it would have been for a violation of FMLA.

## II.   Standard of Review.

Since Plaintiff appears *pro se,* this court will construe liberally his pleadings and other papers, holding them to a less stringent standard than formal papers filed by attorneys. ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991).

Fed. R. Civ. P. 12(b)(1) states that a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  Unlike dismissal under Fed. R. Civ. P. 12(b)(6), dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. ***Birdsong v. Westglen Endoscopy Center, L.L.C.,*** 176 F. Supp. 2d 1245, 1247 (D. Kan. 2001); *See **Castaneda v. INS**,* 23 F.3d 1576, 1580 (10th Cir.1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  "A court lacking jurisdiction 'must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.' " ***Scheideman v. Shawnee County Bd. of County Comm'rs,*** 895 F. Supp. 279, 280 (D.

---

[1] Contrary to Defendant's contention, the court could not find any case law supporting its argument that Plaintiff was required under FMLA to exhaust administrative remedies prior to filing the present action.  Further, this court's jurisdiction is not affected by Plaintiff's failure to appeal the MSPB's decision to remove Plaintiff. *See **Bankston v. White*** 345 F.3d 768, 770 (9th Cir. 2003) (finding that because ADEA does not have an exhaustion requirement, jurisdiction over terminated federal employee's ADEA suit was not barred by employee's voluntary dismissal, sixty-one days after its filing, of Merit Systems Protection Board [MSPB] appeal). ***But cf. McAdams v. Reno***, 64 F.3d 1137, 1142 (8th Cir. 1995) (requiring plaintiff to exhaust her Title VII claims before the MSPB before filing civil action).

Kan.1995) (quoting *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)). *See also* Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3).

Further, a Rule 12(b)(1) motion may be construed either as a facial or factual challenge to the court's subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). If the motion is treated as a facial attack, the court may consider only the allegations contained in the complaint, and the court must accept the allegations as true. *Id.* A facial attack questions the sufficiency of the complaint. *Id.*

On the other hand, a factual challenge differs in both strategy and procedure. For a factual challenge, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*

In such circumstances, a court's reference to evidence outside the complaint does not convert the motion to a Rule 56 motion. *Id.* However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Id.* The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *Id.* (citations omitted).

In the present matter, Defendant offers argument and supporting affidavits

attacking the factual basis underlying the court's jurisdiction.  However, Defendant's primary argument for dismissal centers around the fact that the United States has not waived sovereign immunity to Plaintiff's claims under the Family Medical Leave Act ("FMLA"), **5 U.S.C. § 6381**.  The Defendant's exhibits are generally aimed at establishing Plaintiff's pattern of erratic workplace behavior.  However, the exhibits are not necessary to reach the court's decision on the Motion to Dismiss.

Thus, the court does not construe the Motion to Dismiss as relying on matters outside of the complaint and the exhibits thereto.  What is important is that Defendant does not dispute the Complaint's factual allegations which are dispositive for the motions to dismiss: that Plaintiff was Defendant's employee; that Plaintiff was employed by Defendant for more than twelve months; and that Plaintiff asserts his claims under FMLA.  Accordingly, the court will base its decision on the facts as alleged in the Complaint.  Because the motion will be construed as a facial challenge to the court's jurisdiction, the court is not compelled to convert the motion to dismiss under FED. R. CIV. P. 12(b)(6) or to a motion for summary judgment under FED. R. CIV. P. 56.

Finally, the party invoking federal jurisdiction bears the burden of proof. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  When the question at issue is one involving the jurisdiction of a federal court, jurisdiction must be shown by the plaintiff affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it. *Sac & Fox Nation v. Cuomo,* 193 F.3d 1162, 1165 (10th Cir. 1999).  "It is presumed that a cause lies outside [the court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party

asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).

III.   **Analysis.**

FMLA grants private and federal employees an entitlement to periods of leave under certain enumerated circumstances.  Title I of FMLA applies to private employees and federal employees not covered under Title II. **29 U.S.C. § 2612(a)(1).** Title II applies to certain federal employees with more than 12 months of service. **5 U.S.C. § 6382(a)(1).**  Titles I and II grant employees equivalent rights regarding leave. However, permanent, federal civil service employees under Title II have no direct right of action to pursue claims under FMLA in federal district court. *Russell v. United States Dep't of Army,* 191 F.3d 1016, 1019 (9th Cir. 1999) (holding that Title II of FMLA does not contain express waiver of government's sovereign immunity); *Mann v. Haigh,* 120 F.3d 34, 37 (4th Cir. 1997).  It is well settled that the United States is immune from suit unless sovereign immunity has been waived. *Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir 1989).  Waivers of sovereign immunity must be unequivocal and are to be strictly construed. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34 (1992). With regard to the FMLA, the law is clear that, as a permanent federal civil service employee covered by Title II of the FMLA, he has no direct right of action to pursue such a claim in federal district court. **5 U.S.C. §§ 6381(1); 5 C.F.R. § 630.1201(b)(i).**

The exclusive remedy for federal employees challenging agency action is the Civil Service Reform Act (CSRA), which obliges federal employees who seek redress for FMLA violations to pursue their claims through grievance procedures or agency

management.  **Davis v. Thompson** 367 F. Supp. 2d 792, 800 (D. Md. 2005).  While

the CSRA may not specifically address the FMLA, that does not amount to an implied

waiver of sovereign immunity. **Id.**  Thus, while a Title II federal employee may bring a

FMLA claim before the MSPB, and thereafter appeal to the U.S. Court of Appeals for

the Federal Circuit, "once that is done, that is the end of the road."  **Id.; Russell v.**

**United States Dept. of the Army**, 191 F.3d 1016, 1019 (9th Cir.1999) ("the absence of

an express waiver of the government's sovereign immunity in Title II of the FMLA bars

private suits for violations of its provisions").

Plaintiff was employed for over 12 months with Defendant.  **Compl. ¶ 5.**

Therefore, he is considered a "Title II" employee under FMLA.  The government has

not waived its sovereign immunity regarding claims asserted by Title II employees.

Therefore, this court lacks subject matter jurisdiction over Plaintiff's FMLA claims.

These claims must be dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1).

Accordingly,

**IT IS RECOMMENDED** as follows:

1.    That Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1)

[#5], filed on July 1, 2005, **BE GRANTED**;

2.    That this civil action **BE DISMISSED WITH PREJUDICE**; and

3.    That the Scheduling Conference set for August 24, 2005, at 9:30 a.m.

(MST) **IS VACATED** pending resolution of this matter by the District

Judge, at which time the Scheduling Conference may be re-set.

**IV.    Advisement to the Parties.**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. **28 U.S.C. § 636(b)(1); F**ED**. R. C**IV**. P. 72(b)**; *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1)**. A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not

preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the magistrate judge's report and recommendation

must be both timely and specific to preserve an issue for *de novo* review by the district

court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming*

*Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to

certain portions of the magistrate's order, cross-claimant had waived its right to

appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352

(10th Cir. 1992) (by their failure to file objections, Plaintiffs waived their right to appeal

the magistrate's ruling).

**DATED** at Denver, Colorado, this 16th day of August, 2005.

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge